[Cite as *State v. Morock*, 2015-Ohio-3152.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-559 |
| | | (C.P.C. No. 13CR-4654) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Robert T. Morock II, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 6, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

*Dennis G. Day*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Robert T. Morock II, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of theft. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} In September 2013, Morock was indicated on one count of theft, in violation of R.C. 2913.02, a fourth-degree felony. The matter proceeded to a jury trial in June 2014. The following evidence was adduced at trial.

{¶ 3} During the morning of July 3, 2013, David Harpst, who was 73 years old at the time, went to Huntington National Bank to make a deposit and withdrawal. Harpst deposited multiple social security checks and withdrew approximately $1,950 in cash.

The cash was provided to Harpst in a white envelope with "Huntington National Bank" or "Huntington" marked on the front. Harpst's name did not appear on the envelope.

{¶ 4} After leaving the bank, Harpst took a taxi to a Kroger grocery store on Eakin Road in Columbus. Harpst bought groceries totaling approximately $25. At the register, Harpst paid with cash from the Huntington envelope and placed the envelope on a counter near the cashier. Harpst then left Kroger, inadvertently leaving the envelope behind. When Harpst returned, the envelope was gone. Harpst searched for the envelope but could not find it. Harpst provided his contact information to Kroger personnel, but the cash was never found and returned to him.

{¶ 5} A surveillance video recording of Harpst's transaction at the register was played at trial. The video showed Harpst using cash from an envelope to make a purchase. Harpst left the envelope on a small counter on the customer side of the cashier's keyboard. Morock and his wife were waiting in line next to the conveyer belt and in close proximity to Harpst during the transaction. After Harpst completed his transaction, Morock and his wife moved forward to make their purchase. As Morock and his wife were checking out, Morock saw the envelope and picked it up. Morock briefly looked at the contents of the envelope and then held it to his side, out of view of the cashier. Morock then left the store with the envelope. Morock was identified as the person who picked up the envelope in the video based on his and his wife's use of a Kroger customer loyalty card in connection with their purchase.

{¶ 6} Once plaintiff-appellee, State of Ohio, rested its case, Morock's counsel moved, outside the presence of the jury, for an acquittal pursuant to Crim.R. 29. The trial court denied the motion for acquittal and provided an explanation for the denial. After the trial court provided that explanation, the jury was brought back into the courtroom. At that time, the defense rested and renewed its motion for acquittal pursuant to Crim.R. 29. The trial court stated, "[m]y ruling is the same," and followed this statement with an instruction that the court's ruling "has nothing to do with how you decide this case. You decide this case based on the jury instructions. The fact that I made a ruling on the motion has nothing to do with your job. That's like a technicality. Don't draw an inference one way or another about how I feel about the case, all right?" (Tr. 141.)

{¶ 7}    The jury found Morock guilty of theft as charged.  The trial court sentenced Morock to three years of community control and ordered him to pay restitution in the amount of $1,900.  Morock timely appeals his conviction.

## II.  Assignments of Error

{¶ 8}    Morock assigns the following errors for our review:

> [1.] The trial court erred and deprived the appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One [,] Section Ten of the Ohio Constitution by finding him guilty of theft as the verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

> [2.] The trial court abused its discretion and erred to the prejudice of the appellant by overruling the appellant's Rule 29(B) motion for acquittal in the presence of the jury.

> [3.] Appellant was denied the effective assistance of counsel when trial counsel moved the trial court for acquittal in the presence of the jury and when trial counsel failed to object to the prosecution's mantra of "victim" involving an ultimate issue of fact.

## III.  Discussion

### A.  Sufficiency and Weight of the Evidence

{¶ 9}    In his first assignment of error, Morock argues his conviction for theft was not supported by sufficient evidence and was against the manifest weight of the evidence. Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.  "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime."  *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 10} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, the finder of fact may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 11} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence in only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 12} To prove Morock committed theft as charged in the indictment, the state was required to show that Morock, with purpose to deprive the owner of property, knowingly obtained or exerted control over the property without the consent of the owner or person authorized to give consent. R.C. 2913.02(A)(1). As pertinent here, theft of

property, valued at $1,000 or more and less than $7,500, from an "elderly person" is a felony of the fourth degree. R.C. 2913.02(B)(3); *see* R.C. 2913.01(CC) (defining an "elderly person" as a "person who is sixty-five years of age or older").

{¶ 13} The enactment of R.C. 2913.02 in 1974 consolidated several common-law theft offenses, including larceny, into a single offense. *State v. Vrona*, 47 Ohio App.3d 145, 154 (9th Dist.1988) (George, J., concurring). Thus, case law regarding larceny is informative here. *See In re B.C.*, 191 Ohio App.3d 739, 2010-Ohio-6377, ¶ 18 (3d Dist.) (reviewing common-law principles regarding larceny in the context of analyzing whether a theft occurred). In *Brooks v. State*, 35 Ohio St. 46, 50 (1878), the Supreme Court of Ohio held that a finder of lost property commits larceny "when, at the time he finds it, he has reasonable ground to believe, from the nature of the property, or the circumstances under which it is found, that if he does not conceal but deals honestly with it, the owner will appear or be ascertained." *See Baker v. State*, 29 Ohio St. 184 (1876), syllabus ("When a person finds goods that have actually been lost, and takes possession with intent to appropriate them to his own use, really believing at the time, or having good ground to believe, that the owner can be found, it is larceny."). It is not necessary to demonstrate that the accused "should, at the time of taking possession of the property, have known, or have had reason to believe he knew, the *particular person* who owned it, or have had the means of identifying him *instanter*." (Emphasis sic.) *Brooks* at 49. Furthermore, "[w]hile it is true that the common law offense of larceny required a finder to intend to steal property at the time he took the property into his possession, R.C. 2913.02 expands upon the common law principle by allowing a theft conviction if the finder knowingly exerts control over the property with purpose to deprive the owner of such property." *State v. Porter*, 9th Dist. No. 16769 (Jan. 25, 1995).

{¶ 14} Morock argues the issue of whether he committed the offense of theft depends on one's interpretation of the surveillance video played at trial. According to Morock, the video provided no insight into his thinking and there is no other evidence to show that he believed that the owner of the property could be found. We disagree. Viewed in a light most favorable to the state, the evidence at trial, including the surveillance video, demonstrated Morock committed theft as charged. The surveillance video shows Morock and his wife waiting in line to make a purchase at Kroger. After the

elderly man in front of them, Harpst, completed his transaction, Morock and his wife moved forward to make their purchase. Morock noticed the envelope sitting on the small payment counter behind the cashier's keyboard and next to the electronic payment device. The video shows Morock curiously looking inside the envelope and then placing it out of view of the cashier, as if attempting to hide his discovery from view. Morock did not inform the cashier or any other Kroger personnel of what he found on the payment counter prior to leaving the store.

{¶ 15} Under the circumstances in which Morock found the cash, he knowingly exerted control over the cash, even though the owner reasonably could have been found. The cash was not found on the street. Morock found it on the payment counter in the checkout lane of a grocery store. Considering the location of where Morock found the envelope of cash, had Morock honestly dealt with the cash, the owner would have been discovered relatively quickly and easily. Thus, the evidence reasonably demonstrated Morock knowingly deprived the owner of his property. The evidence further established that the amount of cash in the envelope was over $1,000, and that Harpst was 73 years old on the date of the theft.

{¶ 16} Considering the foregoing evidence, the state established the essential elements of the crime of theft as charged. It was reasonable for the jury to find Morock guilty of theft from an elderly person of property with a value of $1,000 or more, but less than $7,500. Further, Morock fails to show that the jury clearly lost its way and created a manifest miscarriage of justice such that his conviction must be reversed and a new trial ordered. The evidence at trial, particularly the surveillance video, weighed heavily in favor of the conviction. Because Morock's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, his first assignment of error is overruled.

### B. Denial of Rule 29(B) Motion in the Presence of the Jury

{¶ 17} In his second assignment of error, Morock argues the trial court erred by overruling his Crim.R. 29 motion for acquittal in the presence of the jury. Crim.R. 29 provides that the trial court must enter a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense." Crim.R. 29(A). Thus, a Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Reddy*,

10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11.

{¶ 18} "Many courts have recognized that better practice requires that motions for acquittal be made outside the presence and hearing of the jury."  (Citations omitted) *Columbus v. Andrews*, 10th Dist. No. 91AP-590 (Feb. 27, 1992) (although defense counsel requested the motion for acquittal be heard at sidebar, the trial court erroneously required that the motion be made and argued in the presence of the jury).  "The obvious danger inherent in a perfunctory denial of an acquittal motion in open court is that the jury may believe the trial judge is expressing his opinion on defendant's guilt."  *United States v. McCarty*, 6th Cir. No. 89-5065 (Dec. 18, 1989).   "Such action, although disapproved, brings about reversal only upon a showing of prejudice coupled with other aggravating factors."  *Id.*   Thus, a trial court ruling on a motion for acquittal in the presence of the jury is not by itself prejudicial error.  *See United States v. Calhoun*, 276 F.Appx. 114, 117-18 (3d Cir.2008); *see also United States v. Anderson*, 471 F.2d 201, 204 (5th Cir.1973) ("At most this ruling [on defense counsel's motion for acquittal] communicated to the jurors that the judge considered the evidence sufficient to warrant a jury decision of guilt or innocence.  This determination by the trial judge is always implicit in his submission of the case to the jury; its communication to the jurors by denial of the motion for acquittal in the jury's presence was not error.").  When defense counsel, and not the court, initiates the motion for acquittal discussion in the presence of the jury, that circumstance weighs against a finding of reversible error.  *McCarty*.   Moreover, a cautionary instruction made in connection with a ruling on a motion for acquittal in the presence of the jury helps to mitigate any prejudice.  *See United States v. Diharce-Estrada*, 526 F.2d 637, 641 (5th Cir.1976) ("In a close case where no cautionary instruction is subsequently given, this danger [of prejudice] is increased.").  A jury is presumed to follow the court's instructions.  *State v. Raglin*, 83 Ohio St.3d 253, 264 (1998).

{¶ 19} Here, outside the presence of the jury, defense counsel moved for acquittal, pursuant to Crim.R. 29, immediately after the state indicated to the trial court it was ready to rest.  Defense counsel made arguments in favor of granting the motion, but the trial court overruled the motion, providing its reasoning for the ruling.  The jury returned

to the courtroom, and the state indicated it was resting. Then, defense counsel stated, "[t]he defense rests at this time, and we would like to renew our motion for acquittal pursuant to Rule 29." (Tr. 141.) The trial court stated, "All right. My ruling is the same." (Tr. 141.) The trial court did not reiterate its reasons for denying the motion for acquittal, and it provided a cautionary instruction in connection with its denial of the renewed motion for acquittal. The trial court expressly informed the jury the ruling on the motion should have no bearing on the jury's deliberations regarding Morock's guilt. Under these circumstances, we find no reversible error in the trial court's denial of Morock's Crim.R. 29 motion in the presence of the jury.

{¶ 20} Accordingly, Morock's second assignment of error is overruled.

### C. Alleged Ineffective Assistance of Counsel

{¶ 21} In his third assignment of error, Morock argues he was denied effective assistance of counsel due to his trial counsel moving for acquittal in the presence of the jury and failing to object to the use of the word "victim" to identify Harpst. This argument is not persuasive.

{¶ 22} In order to prevail on a claim of ineffective assistance of counsel, Morock must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Morock to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland* at 690. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. "To allow a defendant to claim ineffective assistance of counsel based on a failure to object at a time when error could be corrected or avoided would allow a defendant to whipsaw the state

where a plain error claim failed." *State v. Horsley*, 10th Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 41.

{¶ 23} If Morock can demonstrate his counsel's performance was deficient, he must then establish he was prejudiced by the deficient performance. *Strickland* at 687. To show prejudice, Morock must establish there is a reasonable probability that, but for his counsel's alleged errors, the result of the trial would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204, citing *Strickland*. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Strickland* at 694. The failure to show either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 (" '[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.' ").

{¶ 24} Morock fails to demonstrate that his trial counsel's performance was deficient. According to Morock, his trial counsel was deficient because she moved for acquittal in the presence of the jury. Although defense counsel moved for acquittal in the presence of the jury, she originally moved for acquittal and argued in favor of the motion outside the presence of the jury. Such conduct did not constitute deficient performance under *Strickland*. *See State v. Spradlin*, 3d Dist. No. 6-93-1 (Nov. 23, 1993) (finding defense counsel's performance not deficient even though counsel had moved for acquittal in front of the jury, taking particular note that defense counsel's arguments were presented to the court outside the presence of the jury).

{¶ 25} Morock also argues his trial counsel was deficient because she did not challenge, during the course of trial, the state and one witness's use of the term "victim" in reference to Harpst. This argument is also unpersuasive. A "victim" is a "person harmed by a crime, tort, or other wrong." *Black's Law Dictionary* (10th Ed.2014). Morock does not challenge the fact that Harpst inadvertently left an envelope containing cash at the checkout of a grocery store, or that upon Harpst's return to the store the cash was gone. At a minimum, Harpst did suffer a wrong because the envelope was picked up and taken without any effort to return it to its rightful owner. Whether Harpst was a victim of a crime committed by Morock was the issue in dispute. Thus, we resolve that Morock's trial

counsel was not ineffective for not challenging the use of the word "victim" by the prosecutor and a witness. *See State v. Wright*, 9th Dist. No. 02CA008179, 2003-Ohio-3511, ¶ 5 (finding defense counsel's use of the term "victim" not to violate "any essential duty to his client" or deprive the defendant of a fair trial). *See State v. Donald*, 7th Dist. No. 08 MA 154, 2009-Ohio-4638, ¶ 69 (finding no plain error even though the trial court used the term "victim"). Because Morock cannot demonstrate his trial counsel's representation was deficient, his ineffective assistance argument fails.

{¶ 26} For these reasons, Morock's third assignment of error is overruled.

## IV. Conclusion

{¶ 27} Having overruled Morock's first, second, and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and SADLER, J., concur.