[Cite as *State v. Ealy*, 2016-Ohio-1185.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-600 |
| v. | : | (C.P.C. No. 14CR-2959) |
| Nicholas L. Ealy, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 22, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Clark Law Office*, and *Toki Michelle Clark*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Nicholas L. Ealy, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of robbery, in violation of R.C. 2911.02. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 25, 2014, the victim, Ronald Crowder, was beaten and robbed in an alley off Miller Avenue in Downtown Columbus. According to his trial testimony, Crowder spent the day at a casino on the west side of the city before departing in his vehicle with two friends around 2:30 a.m. He dropped off one of his friends in the area of James Road and Broad Street and the second at Town Street and Washington Avenue.

After dropping off his passengers, Crowder took Bryden Road to Miller Avenue in the direction of a highway that would take him east to his home in Reynoldsburg. When Crowder was driving on Miller Avenue, he saw appellant standing near a vehicle in the alley. Crowder had known appellant for a number of years because he was acquainted with appellant's ex-girlfriend, and he had purchased drugs from some of their mutual friends. Crowder acknowledged at trial that he had suffered from drug addiction in the past and had relapsed on or about the time of the assault. He denied that he was under the influence of drugs at the time of the robbery.

{¶ 3} Crowder testified that appellant flagged him down as he drove past the alley. Believing appellant was in some kind of trouble, Crowder turned down the alley toward appellant. He saw two female passengers in a vehicle parked in the surface lot at the end of the alley. Crowder pulled his vehicle along side the other vehicle. According to Crowder's trial testimony, as soon as he opened his car door to exit his vehicle, appellant kicked him in the head and ribs. Crowder testified that, as appellant continued to kick him, a woman entered the back seat of his vehicle and began rifling through the center console and trying to get in his pockets. Appellant then stole Crowder's keys from the ignition and returned to his own vehicle. Appellant and the two women then fled the scene in the other vehicle.

{¶ 4} After appellant and the two women left, Crowder walked to a nearby dialysis center and asked to use the phone, but he was denied entry. Crowder then walked to a pay phone at a gas station on Livingston Avenue and dialed 911 to report the incident. Crowder identified appellant as his assailant during that call, and he also told the 911 dispatcher that a woman had tried to go through his pockets. A recording of the 911 call was played for the jury during appellant's trial.

{¶ 5} Officer Joshua Seymour of the City of Columbus, Division of Police, met Crowder at the gas station. At trial, Officer Seymour recalled that Crowder was "having a hard time standing, kind of shaken." (Tr. Vol. I, 84.) After a brief interview, Officer Seymour drove Crowder to his vehicle and called for a tow truck. Officer Seymour left before the tow truck arrived. When Crowder returned to his vehicle, he noticed that a sweatshirt had been stolen from the back seat and that a pack of Black & Mild cigars had been stolen from the center console.

{¶ 6} A few days later, Crowder spoke with Detective Thomas Clark on the telephone, and he identified appellant as his assailant. When Crowder subsequently spoke with Detective Clark at the police station, he was able to identify appellant's photograph. Detective Clark then interviewed appellant who told him that he had run into Crowder on Miller Avenue on the night in question and that they had gotten into a physical altercation over some property that Crowder had previously stolen from appellant. Appellant claimed that no one was with him when he fought with Crowder, and he denied stealing any of Crowder's property.

{¶ 7} On June 5, 2014, a Franklin County Grand Jury indicted appellant on one count of robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree, and one count of robbery, in violation of R.C. 2911.02(A)(3), a felony of the third degree. A jury found appellant guilty of both counts in the indictment. The trial court convicted appellant of two counts of robbery and imposed a concurrent prison term of 6 years as to Count 1 and 12 months as to Count 2.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellant assigns the following as trial court error:

[1.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

[2.] THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[3.] THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S MOTIONS FOR ACQUITTAL.

[4.] IT IS PLAIN ERROR FOR THE TRIAL COURT TO FAIL TO DECLARE A MISTRIAL AFTER A JUROR COMPLAINS OF VIEWING THE COURTHOUSE ELECTRONIC DOCKETING BOARD AND SEEING DEFENDANT SCHEDULED FOR SENTENCING ON ANOTHER CRIMINAL CASE.

## III. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 9}   In his first assignment of error, appellant contends the evidence presented by plaintiff-appellee, State of Ohio, was insufficient to sustain his robbery convictions. We disagree.

{¶ 10} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).  Whether the evidence is legally sufficient to support a verdict is a question of law, not fact.  *Id.*  In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact.  *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001).

{¶ 11} Pursuant to R.C. 2911.02, the offense of robbery is defined, in relevant part, as follows:

> (A) No person, in attempting or committing a theft offense
> * * * shall do any of the following:
>
> * * *
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.
>
> (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

{¶ 12} Our review of the trial testimony reveals that Crowder's testimony alone, if believed, is sufficient to support a conviction of robbery. Appellant argues, however, that Crowder's trial testimony is so inconsistent with the stories he told Officer Seymour and Detective Clark that his testimony is completely unworthy of belief. For example, Crowder reportedly told Officer Seymour that he gave appellant a ride just prior to the assault, which differs from Crowder's trial testimony. Appellant also points to Officer Seymour's testimony that Crowder did not identify appellant as his assailant in his initial interview at the gas station, whereas Crowder testified that he did identify appellant at that time. Officer Seymour also testified that Crowder told him that the woman in the backseat started hitting him with an ice scraper, which was a detail Crowder did not mention in his trial testimony. Appellant notes that Crowder testified he dropped one of his friends off at his home but that Officer Seymour testified that Crowder told him he had taken the friend to a bus stop on East Broad Street.

{¶ 13} Finally, appellant argues that Crowder's testimony that he first drove one of his friends to a location at James Road and Broad Street and then drove the second friend to his home at Town Street and Washington Avenue "makes no sense." (Appellant's Brief, 1.) Given the location of the casino on the west side of the city, appellant argues that it "was never explained" why appellant would first stop at James and Broad and then turn back to the west toward Town and Washington before turning back again to the east toward his home in Reynoldsburg. (Appellant's Brief, 7.)

{¶ 14} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Although appellant points to some legitimate inconsistencies between Crowder's pretrial statements regarding the robbery and his trial testimony, the inconsistencies are not material to the elements of the offense of robbery. Consequently, it was for the jury to

determine, in light of the inconsistencies, whether each of the elements of the offenses was proven beyond a reasonable doubt. Contrary to appellant's claim, when Crowder's testimony is viewed in the light most favorable to appellee, the relatively minor inconsistencies in his accounts of the events leading up to the assault do not render his trial testimony incredible, as a matter of law. Moreover, even if the inconsistencies between Crowder's pretrial statements and his trial testimony are resolved in appellant's favor, there is no version of Crowder's story that is consistent with appellant's innocence.

{¶ 15} For similar reasons, appellant's argument that Crowder's account of the route he took before meeting appellant "makes no sense" is one of weight and credibility, rather than sufficiency. As a general rule, the reasonableness of witness testimony is an issue of credibility, not sufficiency. *Yarbrough* at ¶ 79-80; *Bankston* at ¶ 4. *See also State v. Bevins*, 1st Dist. No. C-050754, 2006-Ohio-6974, ¶ 39, citing *4 Ohio Jury Instructions*, Section 405.20 (2005); *State v. Ferguson*, 11th Dist. No. 2007-A-0059, 2008-Ohio-2392, ¶ 46, quoting *4 Ohio Jury Instructions*, Section 405.20 (2005). Crowder's accounts of the events that occurred prior to the robbery are immaterial to the elements of robbery. Moreover, appellant admitted in his statement to Detective Clark that he had met Crowder on Miller Avenue on the night in question and that the two had fought, but he denied robbing Crowder. Thus, Crowder's unusual route of travel prior to the robbery has no relevance to appellant's claim of innocence.

{¶ 16} In the final analysis, we find that the alleged inconsistencies between Crowder's pretrial accounts and his trial testimony are matters of weight and credibility, rather than sufficiency. Accordingly, appellant's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 17} In his second assignment of error, appellant contends his convictions are against the manifest weight of the evidence. We disagree.

{¶ 18} In determining whether a verdict is against the manifest weight of the evidence, an appellate court acts as a "thirteenth juror." *State v. Cardona*, 10th Dist. No. 10AP-1052, 2011-Ohio-4105, ¶ 23, citing *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 22; *State v. Hairston*, 10th Dist. No. 01AP-1393, 2002-Ohio-4491, ¶ 17. Under this standard of review, an appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). However, in engaging in this weighing, an appellate court must bear in mind the factfinder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The power to reverse on manifest-weight grounds should only be used in exceptional circumstances when "the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 19} A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831. " '[W]hile the [factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 113 (10th Dist.), quoting *State v. Craig*, 10th Dist. No. 99AP-739 (Mar. 23, 2000).

{¶ 20} As noted above, the inconsistencies between Crowder's accounts of the robbery do not involve the elements of the offenses, nor does Crowder's testimony regarding his circuitous route of travel prior to the encounter with appellant. Without exception, the inconsistencies in his pretrial accounts and his trial testimony involve relatively minor details, not the elements of the offenses. Therefore, it was the prerogative of the jury to take note of the inconsistencies and resolve or discount them accordingly. *Id.*; *Craig*. *See also State v. Butler*, 10th Dist. No. 13AP-360, 2013-Ohio-5397 (inconsistencies between the rape victim's statements to investigators and her trial testimony, such as her ability to describe the length of the knife used by the appellant and whether she agreed to go to the appellant's house to smoke marijuana before the rape, are but minor details in the series of events which could resolve in determining the victim's credibility); *State v. Brown*, 9th Dist. No. 18591 (Aug. 19, 1998) (inconsistencies in such "minor details" as each victim's specific location within the apartment at the time of the shooting, what the victims were doing just prior to the shooting, how many men accompanied the defendant to the apartment, and when, if ever, they entered the apartment do not pertain to the elements of the offenses of aggravated robbery and

felonious assault; they are matters of weight and credibility for the jury to decide). Moreover, during Officer Seymour's direct examination, he testified as follows:

> Q Would it surprise you if there were things that Mr.Crowder testified to and stated that are not included in your report?
>
> A No, sir, it would not.
>
> Q Why not?
>
> A Well, given the situation, the lateness of the hour for both him and myself and the traumatic experience that he had just went through, I would expect for myself to have potentially have forgotten to put something in the report or he might have forgotten to tell me the specific detail.[1]

(Tr. Vol. I, 86.)

{¶ 21} When the prosecutor asked Officer Seymour, during re-direct, about possible inconsistencies between Crowder's trial testimony and the details he recorded in his report, the following exchange took place:

> Q So things that are in your report, as you stated, would not surprise you if Mr. Crowder testified differently to some of those items?
>
> A Correct, it would not surprise me.
>
> Q Because it was late for him and it was late for you, right?
>
> A Yes, sir.
>
> Q So if some of these minor inconsistencies could have gotten mixed up?
>
> A Absolutely.

(Tr. Vol. I, 96-97.)

{¶ 22} Our review of the evidence reveals that the material facts related by Crowder prior to trial are consistent with his trial testimony.  For example, Crowder identified appellant as his assailant in the 911 recording that was played to the jury.  In

---

[1] Officer Seymour worked third shift, meaning he was on duty from 10:00 p.m. to 6:00 a.m. on the night of the incident.

Crowder's telephone interview with Detective Clark, he stated that appellant was the man who assaulted and robbed him. Additionally, in his subsequent interview at police headquarters, Crowder was able to identify appellant's photograph, and he related the similar story to Detective Clark that he related in his trial testimony. Although Detective Clark testified that the story Crowder gave in the interview was "different" than the story he related in the phone call, he maintained that there were "no glaring changes" to Crowder's story and that "[i]t was consistent to what he had told me on the phone." (Tr. Vol. II, 109.) Moreover, appellant partially corroborates Crowder's trial testimony in his statement to Detective Clark. Appellant admitted to Detective Clark that he saw Crowder on Miller Avenue on the night in question and that the two got into a fight, though appellant denied robbing Crowder.

{¶ 23} In the final analysis, it was for the jury to determine whether Crowder's testimony was believable in spite of the inconsistencies between his pretrial accounts of the robbery and his trial testimony. Appellant's counsel was able to raise several of the inconsistencies in appellant's accounts of the incident in his cross-examination of appellant, Officer Seymour, and Detective Clark. The trial court also admitted Officer Seymour's written report of the incident into evidence over the prosecutor's objection. Consequently, appellant's counsel made sure that the jury was aware of the inconsistencies between Crowder's pretrial statement to Officer Seymour and his trial testimony, and the jury had the opportunity to consider those inconsistencies in determining the credibility and weight of Crowder's testimony. On this record, we cannot say that the jury lost its way in resolving the conflicts in the evidence and in finding appellant guilty of robbery. Accordingly, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 24} In his third assignment of error, appellant contends that the trial court erred when it denied his motion for acquittal.[2] We disagree.

---

[2] In overruling the motion for acquittal, the trial court stated: "We've had testimony of Mr. Crowder in this case. Although he has some credibility issues perhaps that could be exploited by the defense, it's still a matter where I don't see that I can say that no rational person could possibly find him credible; and, therefore, since he's testified to every element of the criminal offense of robbery, I have to overrule the motion." (Tr. Vol. II, 132.)

{¶ 25} Pursuant to Crim.R. 29(A), on motion of a defendant or on its own motion, after the evidence on either side is closed, the trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction."  "Thus, a Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Morock*, 10th Dist. No. 14AP-559, 2015-Ohio-3152, ¶ 17, citing *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11.

{¶ 26} In overruling appellant's first assignment of error, we determined that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of robbery had been proven beyond a reasonable doubt.  For the same reason, we overrule appellant's third assignment of error.

### D.  Fourth Assignment of Error

{¶ 27} In his fourth assignment of error, appellant maintains that the trial court committed plain error when it failed to declare a mistrial when one of the jurors learned that appellant was "scheduled for sentencing for another crime." (Tr. Vol. I, 4.)  The juror in question, juror number 5, read appellant's name on an electronic docketing display located outside the courtroom.

{¶ 28} "The Ohio Supreme Court has declared that '[a] mistrial should not be ordered in a cause simply because some error has intervened.  The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 12, quoting *Tingue v. State*, 90 Ohio St. 368 (1914), syllabus. "Moreover, '[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible.' " *Id.*, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).  " 'A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated.' " *Id.*, quoting *State v. Johnson*, 10th Dist. No. 08AP-652, 2009-Ohio-3383, ¶ 30, citing *Cleveland v. Walters*, 98 Ohio App.3d 165, 168 (8th Dist.1994).

{¶ 29} As a general rule, "[t]he decision whether or not to grant a mistrial rests in a trial court's sound discretion." *State v. Jones*, 10th Dist. No. 12AP-1091, 2014-Ohio-674, ¶ 10, citing *State v. Glover*, 35 Ohio St.3d 18 (1988).  "[T]he failure to grant a mistrial sua

sponte is reviewed under the plain-error standard." *Griffin* at ¶ 13, citing *Johnson* at ¶ 30. "Plain error exists when there is an error that is plain or obvious and affects a substantial right." *Id.*, citing *Johnson* at ¶ 19.

{¶ 30} Appellee argues that, even if the trial court had erred in failing to declare a mistrial, appellant invited or induced the error when he chose not to seek a mistrial after the trial court provided appellant with the opportunity to do so. "Invited error prohibits a party from 'tak[ing] advantage of an error which he himself invited or induced the trial court to make.' " *Jones* at ¶ 22, quoting *Lester v. Leuck*, 142 Ohio St. 91 (1943), paragraph one of the syllabus. The Supreme Court of Ohio "has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed." *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000), citing *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 28 (1986), fn. 16; *see also State ex rel. Lowery v. Cleveland*, 67 Ohio St.3d 126, 128 (1993). " '[A] litigant cannot be permitted, either intentionally or unintententionally to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.' " *State v. Chambers*, 10th Dist. No. 99AP-1308 (July 13, 2000), quoting *Lester* at 93.

{¶ 31} Our review of the transcript of proceedings reveals that the juror in question brought the issue to the attention of the trial court before opening statements. When the trial court inquired of appellant how he wished to proceed, the following exchange occurred:

> [DEFENDANT'S COUNSEL]: Your Honor, I guess my take on it would be that we bring out the one juror who sent out the note, we inquire of him, as [the prosecutor] said, whether there have been any discussion with other jurors, or whether he noticed any other jurors noticing it, and things like that, talk to him, as the court said, about, you know, there are old cases that have nothing to do with this, and assure that the juror would not hold it against my client, and then see how deep this problem goes.
>
> THE COURT: Okay. Is that what you–I mean, I know you've had a chance to talk about this with your attorney, Mr. Ealy. Is that okay with you to do it that way?

THE DEFENDANT:  Yes, sir.

THE COURT:  You're comfortable with that?

THE DEFENDANT:  Yes, sir.

* * *

[DEFENDANT'S COUNSEL]:  Your Honor, without disclosing anything that's privileged, [appellant] was actually a little more comfortable with taking this route than I was when we were discussing it back there about talking to the juror and seeing how deep this goes and stuff.  I do believe he knows what he's talking about.  He knows what he's doing.

 (Tr. Vol. I, 8-9, 11.)

{¶ 32} When the juror appeared before the court and the parties, the trial court explained to the juror that the information he viewed related to a probation revocation hearing and that "[t]he fact that somebody has a prior contact with the judicial system * * * has nothing to do with this case."  (Tr. Vol. I, 12.)

{¶ 33} The trial court then asked the juror if the information would impact his ability to judge the case "on the evidence and the law in this case and this case only."  (Tr. Vol. I, 13.)  The juror responded as follows:

JUROR NO. 5:  I don't think it'll impact my ability to be fair.  It just seems—

THE COURT:  Wrong.

JUROR NO. 5:  Wrong, it's unfair for the defendant.

(Tr. Vol. I, 13.)

{¶ 34} When the trial court asked the juror whether he had spoken to anyone about the information and whether any of the other jurors had seen the information, he answered that "[i]f someone has noticed it already, I didn't want to bring it to their attention. I haven't talked to anyone else about that."  (Tr. Vol. I, 14.)  The juror also stated that he had not heard any of the other jurors discussing the matter.  When the prosecutor asked the juror whether he could remain impartial, the juror stated:

JUROR NO. 5: I'd like to think so, yes. It's difficult to—I'll be honest. It's difficult to remove the inherent unfairness from what he's going to have to go through, that I understand during the course of the trial something may come up that I don't know already, that I would have to put aside. I'm assuming this would be the same situation. It just seems so blatantly unfair. I didn't know if that was normal procedure for that to be coming up, and the way it's set up there is no way for me to ask anyone—

[PLAINTIFF'S COUNSEL]: Right.

JUROR NO. 5: – without this.

[PLAINTIFF'S COUNSEL]: So your answer is you really don't know.

JUROR NO. 5: I really don't. I would like to say, yes, it doesn't affect. It's also very unfair for the defendant to have that happen.

(Tr. Vol. I, 15-16.)

{¶ 35} The trial court then gave appellant's counsel an opportunity to question the juror. The parties also discussed the possibility that an additional curative instruction might be given. The following exchange then took place:

[DEFENDANT'S COUNSEL]: Your Honor, after consultation with my client, we feel that we can go forward, and we feel that perhaps as part of the overall jury instructions, that the court gives, you know, when you do the normal instruction, that the court would instruct them, you know, or at least emphasize the instruction about this is about this case, this is about the evidence that you heard in this case in this courtroom, and nothing else, and not even draw attention to the board. It's not going to be up tomorrow. So whatever damage is done is done, and my client would like to go forward.

THE COURT: Mr. [Ealy].

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to tell you right here and right now, *if you say you want a mistrial, we'll pick a new jury. We'll get that off the board and I'm going to grant you a mistrial and*

*we'll start again.* But if you are comfortable with what [your counsel] has suggested and that he feels you are comfortable with going forward, I'll do it.

THE DEFENDANT: I'm comfortable, sir.

* * *

THE COURT: Yeah, what I want to know is are you willing to go forward as counsel has discussed with you and we'll just—

THE DEFENDANT: Yes, sir. I'm confident in [my counsel] and with the case.

THE COURT: That's what we'll do. That's what we'll do. So let's call the jury in. We'll just proceed. No instructions at this point, we'll just proceed and there we go.

[DEFENDANT'S COUNSEL]: Very good, Your Honor.

(Emphasis added.) (Tr. Vol. I, 20-21.)[3]

{¶ 36} The trial transcript shows that appellant and his trial counsel affirmatively consented to the procedure the trial court used to determine whether, or to what extent, appellant had been prejudiced by the information seen by the juror. It is also evident that appellant and his trial counsel fully participated in the chosen procedure by inquiring of the juror and joining in discussions regarding the extent of the prejudice to appellant and potential curative measures. Although the juror equivocated when asked by the prosecutor whether he could perform his duties impartially, appellant and his trial counsel agreed to proceed notwithstanding the equivocation and without the need for a special curative instruction. Appellant unequivocally agreed to go forward with the trial even though the trial court personally informed him that a mistrial would be declared if appellant so desired. Thus, the record demonstrates that appellant invited or induced the error by affirmatively consenting to the procedure the trial judge proposed and by

---

[3] As part of the instructions given to the jury at the close of the case, the trial court stated: "It would be fundamentally unfair to both sides of the case, if the jury considered information that was not presented in the courtroom. That's why I instructed you not to use the Internet or social media in an attempt to learn about the case or the parties. Only the evidence that was presented here in the courtroom may be considered in your deliberations. Anything other than the evidence presented here in the courtroom must be set aside and not be considered by you in any way in your deliberations or in reaching your verdict." (Tr. Vol. II, 188.)

subsequently expressing his desire to go forward with the trial after being offered the option of a mistrial. Pursuant to the invited-error doctrine, appellant may not take advantage of an alleged error that he induced or invited the trial court to make, even a claim of plain error. *See State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 75, citing *State v. Bogovich*, 10th Dist. No. 07AP-774, 2008-Ohio-3100, ¶ 10.

{¶ 37} For the foregoing reasons, appellant's fourth assignment of error is overruled.

## IV. CONCLUSION

{¶ 38} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

————————————————