[Cite as *State v. Grether*, 2019-Ohio-4243.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
)ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT      )

STATE OF OHIO

     Appellee

     v.

BRANDON GRETHER

     Appellant

C.A. No.      28977

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CR 2016-08-2778

DECISION AND JOURNAL ENTRY

Dated: October 16, 2019

CARR, Presiding Judge.

{¶1} Defendant-Appellant Brandon Grether appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In 2008, Grether moved in with V.A.'s mother. At the time V.A. was around 4 years old. V.A. never knew her biological father, but came to consider Grether her father. Grether and V.A.'s mother had three children together but never married. They all lived together in a home in Cuyahoga Falls. V.A. shared a bedroom with her three half-siblings.

{¶3} In the early morning hours of July 4, 2016, when V.A. was 12 years old, Grether digitally penetrated V.A. DNA consistent with Grether's was later discovered in the underwear V.A. had been wearing.

{¶4} V.A. disclosed the abuse to her mother after Grether left for work that afternoon. V.A. told her mother that she "woke up to daddy fingering [her.]" V.A.'s mother texted Grether

and asked, "Did you finger [V.A.] last night? * * * How could you do this?" Shortly thereafter, Grether called V.A.'s mother and told her that he was drunk and did not know why he did it. Grether left work and went home. When he got home, V.A.'s mother demanded that Grether apologize to V.A., which he did. Grether then left the house.

{¶5} V.A.'s mother called the police and an officer came to the house and took a statement from V.A. and her mother. When asked by the officer whether V.A. remembered if Grether put his fingers inside of her, V.A. responded that she did not know but then said she thought that he did.

{¶6} On July 5, 2016, Grether was discovered in a car in his sister's garage with the vehicle running. Grether was ultimately transported to the hospital by police and, at that time, admitted that he had been attempting suicide, allegedly due to depression.

{¶7} On July 8, 2016, V.A. was interviewed by a social worker at the Children at Risk Evaluation ("CARE") Center. V.A. reported that Grether had touched her "in [her] private area" with his finger. When asked for more details, V.A. indicated that Grether had touched her inside her private area. V.A. also underwent a medical examination.

{¶8} Grether was charged with one count of rape in violation of R.C. 2907.02(A)(1)(b) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). A couple months prior to trial, Grether sent a letter to V.A.'s mother, which read in part, "I'm sorry for what has happened[,] what I've done[.] I just wish I could take it all back[.] I'm so sorry I let you all down."

{¶9} At trial, V.A. testified that Grether penetrated her, which she clarified meant that he touched her "[i]nside of [her] vagina." She indicated that she knew it was inside of her body because she "could feel it and it hurt." V.A. testified that she was certain that Grether penetrated

her vagina with his fingers and averred that he touched her in the place where tampons are inserted.

{¶10} During the cross-examination of V.A., defense counsel played a portion of V.A.'s and her mother's interview with police. That interview was not admitted into evidence. The day after that audio was played, defense counsel moved for a mistrial alleging that a portion of the audio which mentioned Grether's prior conviction was inadvertently played. It is unclear from the record whether the jury heard the portion that was inadvertently played. The trial court denied the motion based upon the invited error doctrine but indicated it was willing to give a curative instruction. Ultimately, defense counsel declined to have the trial court give a curative instruction.

{¶11} With respect to the jury instructions, the State and defense counsel disagreed as to the how jury should be instructed as to the definition of sexual conduct. The State maintained that this Court's precedent in *State v. Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425 and *State v. Nieves*, 9th Dist. Lorain No. 12CA010255, 2013-Ohio-4093, was controlling, while defense counsel asserted that that language in *Melendez and Nieves* would "make[] rapes out of gross sexual imposition." That precedent provides that "insertion, however slight, of a part of the body or other object within the vulva o[r] labia is sufficient to prove vaginal penetration for purposes of proving sexual conduct as defined in R.C. 2907.01(A) and rape in violation of R.C. 2907.02." (Internal quotations omitted.) *Nieves* at ¶ 9, quoting *Melendez* at ¶ 14. Ultimately, the trial court utilized language from *Melendez* and *Nieves* in its instruction.

{¶12} The jury found Grether guilty of both counts. Grether was sentenced to life imprisonment with the possibility of parole after ten years. Grether has appealed, raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

MR. GRETHER WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BASED UPON THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶13} Grether argues in his first assignment of error that his trial attorneys were ineffective. Specifically, Grether maintains that trial counsel were ineffective in allowing the portion of the interview of V.A. and V.A.'s mother to be played that mentioned Grether's prior conviction. Additionally, Grether essentially argues that defense counsel's cross-examination of V.A. amounted to ineffective assistance because it indicated a complete misunderstanding of this Court's precedent in *Melendez* and *Nieves*.

{¶14} In order to prevail on a claim of ineffective assistance of counsel, Grether must show that trial "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Grether must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Grether must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534.

{¶15} Grether first asserts that trial counsel were ineffective in inadvertently playing a portion of the audio of the police interview of V.A. and her mother wherein Grether's prior conviction was mentioned. The audio that was played is not in this Court's record and was not admitted into evidence. Notwithstanding, the trial court recollected the statement as "he [had] done this before. He went to prison for molesting a child or something like that." The trial court

also noted that, while one of the attorneys on the defense side was saying "shh, shh" and waiving his arms as the recording was playing, the other attorney, who was actually playing the recording, did not even appear to hear the inappropriate portion of the recording. The attorney who did hear it then stated that he would have to discuss with co-counsel about whether a curative instruction should be given because such an instruction would "bring it to the attention [of] those that didn't otherwise hear it." Ultimately, defense counsel declined to have a curative instruction given to the jury.

{¶16} Given the foregoing, we fail to see how Grether has demonstrated he was prejudiced by trial counsel's alleged ineffectiveness. Grether's argument is premised on the notion that the jury heard the inappropriate statements and was thereby prejudiced by them. However, Grether's premise is pure speculation. *See State v. Patel*, 9th Dist. Summit No. 24024, 2008-Ohio-4692, ¶ 55 ("It is the duty of the appellant to demonstrate error on appeal and to include appropriate citations to the transcripts and record in support of that argument.").

{¶17} Moreover, even assuming that Grether is correct that the jury heard the statements at issue, we still cannot say that Grether has demonstrated that he was prejudiced by trial counsel's performance. Here, the acts Grether committed were largely undisputed. In addition to V.A.'s trial testimony and prior statements, there was evidence that, after V.A.'s mother texted Grether to ask if he had "finger[ed]" V.A., Grether called and claimed that he was drunk and did not know why he did it. Further, shortly before trial, when Grether would have been well aware of the charges pending against him, Grether sent V.A.'s mother a letter wherein he stated "I'm sorry for what has happened[,] what I've done[.] I just wish I could take it all back[.] I'm so sorry I let you all down." There was also evidence presented that Grether attempted suicide the day after V.A.'s mother confronted him with V.A.'s accusations. Finally, a DNA profile

consistent with Grether's was found on the underwear V.A. was wearing at the time of the assault. In fact, the evidence of sexual abuse was so strong that defense counsel, in closing arguments, stated "[c]learly there is a touching here from all the evidence you heard. We are not going to deny that."

**{¶18}** Grether has not explained how, in light of the evidence presented, and the arguments of defense counsel, Grether was prejudiced even if the jury heard the audio that mentioned his prior conviction. *See id.*

**{¶19}** Grether also contends that his trial attorneys pursued a line of questioning, cross-examination, and argument that was contrary to the law of this district. Grether asserts that it was clear that the trial attorneys' defense was that "any touching of the vaginal area, outside the vaginal opening, [was] not sexual conduct constituting rape, but sexual contact, which would be an element of gross sexual imposition." Grether argues that this goes against the precedent of *Melendez* and *Nieves*. To support his claim that trial counsel misunderstood this Court's precedent, he points to trial counsel's questioning of V.A.

**{¶20}** First, we note that "[t]he scope of questioning is generally a matter left to the discretion of defense counsel." (Internal quotations and citations omitted.) *State v. Bagi*, 9th Dist. Wayne No. 11CA0059, 2012-Ohio-3520, ¶ 19. "A trial counsel's line of questioning on cross-examination is a matter of trial strategy. Ineffective assistance does not result from reasonable cross-examination that does not elicit a desired response." (Internal quotations and citations omitted.) *Id.*

**{¶21}** We cannot say that Grether has demonstrated that trial counsel's cross-examination of V.A. was unreasonable. Given the evidence presented at trial, the main dispute concerned the allegations of rape. From this Court's perspective, it is clear that trial counsel

sought to impeach and discredit V.A.'s trial testimony via trial counsel's cross-examination. In her trial testimony, V.A. was much more definitive and specific about Grether's actions, as compared to her prior statements. As V.A.'s trial testimony provided important evidence to support that allegation, we fail to understand, and Grether has not adequately explained, why impeaching V.A.'s credibility and pointing out disparities between her prior statements and her trial testimony would be unreasonable even assuming trial counsel was mistaken as to this Court's precedent concerning the definition of sexual conduct.

{¶22} As to Grether's claim that trial counsel's misunderstanding of this Court's precedent led Grether to reject a plea offer, Grether's claim is speculative and not supported by the record before this Court. We note that the trial court indicated at the time of sentencing that defense counsel recommended that Grether take a plea deal, "which was for 16 years of flat time." Grether, notwithstanding trial counsel's recommendation, refused the plea.

{¶23} Grether has not demonstrated ineffective assistance of trial counsel. Grether's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. GRETHER BY DENYING THE MOTION FOR MISTRIAL.

{¶24} Grether argues in his second assignment of error that the trial court erred in denying his motion for a mistrial.

{¶25} We review a trial court's decision denying a motion for a mistrial for an abuse of discretion. *State v. Horne*, 9th Dist. Summit No. 25238, 2011-Ohio-1901, ¶ 18. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." (Internal quotations and citations omitted.) *State v. Edwards*, 9th Dist.

Summit No. 28164, 2017-Ohio-7231, ¶ 13. "In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, the jury would have found the appellant guilty beyond a reasonable doubt." (Internal quotations omitted.) *Id.* "To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." *Id.*

{¶26} As discussed above, during the cross-examination of V.A., defense counsel played a portion of V.A.'s and her mother's interview with police. That interview was not admitted into evidence. V.A.'s testimony concluded the testimony for that day. The next day at the beginning of the day, defense counsel moved for a mistrial alleging that a portion of the audio which mentioned Grether's prior conviction was inadvertently played. It is unclear from the record whether the jury heard the portion that was inadvertently played. The trial court denied the motion based upon the invited error doctrine but indicated it was willing to give a curative instruction. Ultimately, defense counsel declined to have the trial court give a curative instruction.

{¶27} "The doctrine of invited error holds that a litigant may not take advantage of an error which he himself invited or induced." (Internal quotations and citation omitted.) *Edwards* at ¶ 37. "[A] litigant cannot be permitted, either intentionally or [unintentionally] to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." (Internal quotations and citation omitted.) *State v. Ealy*, 10th Dist. Franklin No. 15AP-600, 2016-Ohio-1185, ¶ 30. The invited error doctrine has been applied in the context of motions for mistrials. *See State v. Osley*, 6th Dist. Lucas No. L-17-1025, 2018-Ohio-437, ¶ 21-26 (discussing cases related to Defendants' outbursts during

trial); *State v. Jones*, 10th Dist. Franklin No. 12AP1091, 2014-Ohio-674, ¶ 22 ("A number of appellate courts have concluded that the doctrine of invited error prevents a defendant who elicits or provides inadmissible polygraph evidence at trial, from raising the erroneous admission of such evidence either as grounds for mistrial or reversal on appeal."); *State v. Beeson*, 2d Dist. Montgomery No. 19312, 2002-Ohio-4341, ¶ 29-34 ("As the trial court correctly noted in overruling Defendant's motion for a mistrial, the testimony about which Defendant now complains was not elicited by the State. It was elicited by Defendant during cross-examination of the State's witness, Officer Drayton."). Nonetheless, even if the trial court erred in concluding the action amount to invited error, we still conclude the trial court did not abuse its discretion in denying the motion for mistrial.

**{¶28}** As discussed at length above, it is not clear that any member of the jury actually heard the statements about Grether's prior conviction. Accordingly, it is difficult to conclude that Grether was prejudiced by the inadvertent playing of the statements. Further, in light of the evidence before the jury, and defense counsel's closing arguments, also discussed above, we likewise fail to see how the jury was prejudiced by the playing of the statements. Overall, Grether has not demonstrated that the trial court abused its discretion in denying his motion for mistrial as he has not shown that his substantial rights were adversely affected. *See Edwards*, 2017-Ohio-7231, at ¶ 13.

**{¶29}** Grether's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERS[I]BLE
ERROR IN GIVING IMPROPER JURY INSTRUCTIONS ON THE ELEMENT
OF SEXUAL CONDUCT IN THE CHARGE OF RAPE.

**{¶30}** Grether argues in his third assignment of error that the trial court erred in giving an improper jury instruction concerning the definition of sexual conduct. Specifically, Grether challenges the trial court's inclusion of language from *Melendez* and *Nieves* in the instruction. In so doing, Grether focuses on changes to the statutory definition that became effective in 2006.

**{¶31}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. Although trial courts enjoy broad discretion in fashioning jury instructions, they must present a correct, pertinent statement of the law that is appropriate to the facts." (Internal citations and quotations omitted.) *State v. Jackson*, 9th Dist. Summit No. 27739, 2017-Ohio-278, ¶ 23. In addition, Crim.R. 30(A) provides in relevant part that, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

**{¶32}** Prior to the trial court instructing the jury, one of the defense attorneys "renew[ed his] objection to any instruction based on the case of *State v. Nieves*." (Emphasis added.) Whether to give an instruction consistent with *Nieves* and *Melendez* was contested. The statutory definition of sexual conduct states that it "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). As mentioned above, *Melendez* and *Nieves* stand for the proposition that "insertion, however slight, of a part of the body or other object within the vulva o[r] labia is sufficient to prove vaginal

penetration for purposes of proving sexual conduct as defined in R.C. 2907.01(A) and rape in violation of R.C. 2907.02." *Nieves,* 2013-Ohio-4093, at ¶ 9, quoting *Melendez*, 2009-Ohio-4425, at ¶ 14. Defense counsel maintained that including the foregoing language in the instruction would "make[] rapes out of gross sexual imposition."

**{¶33}** On appeal, Grether appears to argue that changes to the statutory definition in 2006, which altered the language from "vaginal or anal cavity" to the current "vaginal or anal opening" were not considered in *Melendez* and *Nieves* and that the changes to the statute have rendered reliance upon the language in *Melendez* and *Nieves* inappropriate. Grether asserts that the current statutory language is "more limiting, and does not include the vulva or labia." *See State v. D.H.*, 10th Dist. Franklin No. 16AP-15, 2018-Ohio-559, ¶ 39-40.

**{¶34}** Grether has not convinced us that we should revisit our case law. Notably, in *Melendez*, this Court cited to the current definition of sexual conduct. *See Melendez* at ¶ 8. Thus, we disagree that this Court did not take the current statutory language into account in developing our precedent. Accordingly, Grether has not persuaded us that, to the extent the trial court's jury instruction included language from *Melendez* and *Nieves*, it was erroneous.

**{¶35}** Grether's third assignment of error is overruled.

### III.

**{¶36}** Grether's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.