[Cite as *State v. Hicks*, 2023-Ohio-3517.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

HARRY HICKS

    Appellant

C.A. No.    22CA011871

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    21CR103881

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

SUTTON, Presiding Judge.

{¶1}    Defendant-Appellant Harry Hicks appeals from his judgment of conviction in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    Mr. Hicks was indicted by a grand jury for one count of rape in violation of R.C. 2907.02(A) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). The victim in this case was Mr. Hicks' biological daughter, who was 10 years old at the time of the sexual assault.

{¶3}    The case proceeded to jury trial, originally scheduled for January 19, 2022. Two weeks before the trial date, a capias warrant was issued for Mr. Hicks' arrest for violating the conditions of his pre-trial release. Mr. Hicks failed to appear for the January 19, 2022 trial and the capias warrant remained in effect. Mr. Hicks was taken into custody on February 16, 2022 and remained in custody until a new trial date was set for June 8, 2022.

**{¶4}** On the morning of the trial, Mr. Hicks' counsel made an oral motion to withdraw as counsel. Counsel told the court that the prosecutor had informed him of a threat Mr. Hicks' sister had made against counsel during a phone call between Mr. Hicks and his sister from jail. In addition to the information Mr. Hicks' counsel provided to the court regarding the threat that had been made against him, Mr. Hicks himself informed the trial court that the attorney-client relationship had broken down. The trial court denied the request and proceeded with the trial.

**{¶5}** During cross-examination of the victim, Mr. Hicks' daughter, Mr. Hicks requested that he be allowed to cross-examine his daughter. The trial court informed Mr. Hicks that would not be possible, and that he could only cross-examine witnesses if he proceeded *pro se*. Mr. Hicks then expressed his desire to proceed *pro se*. The trial court engaged in a long colloquy with Mr. Hicks, informing him of his right to self-representation and advising him of the pitfalls of self-representation. Mr. Hicks maintained he wanted to proceed *pro se*. The trial court granted Mr. Hicks' request and terminated defense counsel's representation of Mr. Hicks, but asked defense counsel to remain as standby counsel to advise Mr. Hicks or in case Mr. Hicks changed his mind. The State objected to Mr. Hicks proceeding *pro se*. Mr. Hicks refused to sign a written waiver of counsel.

**{¶6}** After the trial court allowed Mr. Hicks to proceed *pro se*, Mr. Hicks engaged in various outbursts and interrupted several trial participants. The trial court repeatedly warned Mr. Hicks, both with and without the jury present, about the possible repercussions of his behavior. Before closing arguments, and after Mr. Hicks attempted to call the trial judge, the prosecutor, and the bailiff to the stand as part of his case, the trial court issued the following admonition:

> [M]embers of the jury, I'm going to give you an admonition at this point, and I'm going to repeat this when I give you your formal jury instructions. Please do not hold Mr. Hicks' outbursts or his commentary against him. You are to decide this case based on the facts and the evidence that you've heard from the witness stand.

Despite the fact that this has not gone really smoothly, I do not want you to hold that against him or take into account in any way his conduct, his outburst[s], or his demeanor. Your decision must be made solely based upon the evidence.

The trial court repeated a similar admonition during the formal jury instructions.

{¶7} The jury returned a guilty verdict on both counts. The trial court sentenced Mr. Hicks to life in prison with parole eligibility after 10-15 years on the rape count, and five years in prison on the gross sexual imposition count with the sentences to be served concurrently.

{¶8} Mr. Hicks timely appealed, assigning two errors for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENSE COUNSEL'S MOTION TO WITHDRAW AND FAILED TO APPOINT NEW COUNSEL.**

{¶9} In his first assignment of error, Mr. Hicks argues that the trial court abused its discretion in denying his attorney's motion to withdraw as counsel. We disagree.

{¶10} Pursuant to the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution, a criminal defendant has the right to counsel. *State v. Milligan*, 40 Ohio St.3d 341 (1988), paragraph one of the syllabus. It is well established that an indigent defendant is not entitled to the counsel of his choosing, but rather, only the right to competent, effective representation. *See State v. Murphy*, 91 Ohio St.3d 516, 523 (2001). A criminal defendant does not have the right to counsel with whom he has a rapport or with whom he can develop a meaningful lawyer-client relationship. *State v. Henness*, 79 Ohio St.3d 53, 65 (1997).

{¶11} As this Court has previously noted:

The right to counsel guaranteed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution does not always mean counsel of one's own choosing. The right to counsel must be tempered by the public's right to a prompt, orderly and efficient administration of justice. Attorneys

cannot be shed at every stage of the proceeding so as to impede that orderly administration. On the other hand, there is a right to discharge counsel because of the personal nature of the services being performed.

*State v. Marinchek*, 9 Ohio App.3d 22, 23-24 (9th Dist.1983). In *Marinchek*, this Court concluded "it is the trial court's duty to balance the defendant's right to counsel of his preferential choosing against the public interest in the administration of justice." *Id*. Additionally, "[i]t is well settled that a motion to withdraw as counsel is committed to the sound discretion of the trial court" and "an appellate court will not reverse the decision of the trial court in the absence of an abuse of discretion." *State v. Tiger*, 148 Ohio App.3d 61, 68 (9th Dist.2002). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel. *See State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. Thus, an indigent defendant is entitled to new counsel "only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *State v. Stewart*, 8th Dist. Cuyahoga No. 105649, 2018-Ohio-684, ¶ 13.

{¶13} Here, the following exchange took place on the record:

[DEFENSE COUNSEL]: The client has expressed that he has zero faith in me.
* * *

THE COURT: The [] issue you want[] to address dealt with your client's thoughts or some concerns about your representation?

[DEFENSE COUNSEL]: Yes. I would move for a motion to withdraw from representation. I know it's * * * the 11th hour, but during the phone call * * * the defendant's sister, [K.T.] is, like, threatening to cut my throat. And, look, defense counsel takes a beating. I'm * * * [a] prosecutor for the City of Westlake in the Rocky River Muni Court, and * * * he just told me after we went down that he feels like I'm prosecuting him not defending him.

And * * * in addition to his sister cutting my throat, yes, I wrote down [the defendant thinks defense counsel is] "stupid as fuck," but - - so, clearly between the client's feelings toward me and this new evidence of - - it becomes - - look I do my job, but it becomes very antagonistic. [I]t's laughable to them because they're chuckling, but a sister threatening to cut my throat. And I got [to] think it's a broken relationship, and I would - - don't care to try [the case] under these circumstances.

And just as much for the client, he just - - he feels that he's got two prosecutors on his case, and while I disagree, he - - I think the relationship is broken.

THE COURT: I appreciate that, [defense counsel].

Mr. Hicks, do you want to add anything or be heard relative to [defense counsel]'s statement, comments, and concerns he's just expressed?

THE DEFENDANT: No. I felt the relationship was broken when he made a mockery of me in court last time, about how I couldn't afford the $300,000 bond. And it gets into some real property to put up and stuff. You weren't on the bench. I don't know why. * * *

THE COURT: Okay. Did you do - - you do remember how long ago that was?

THE DEFENDANT: That was February 25th.

THE COURT: So about four months ago.

THE DEFENDANT: About 10:00 o'clock in the morning.

| | |
|---|---|
| THE COURT: | Did you do anything in the last four months to bring that to my attention or my - - |
| THE DEFENDANT: | I - - [defense counsel] was supposed to file a bond reduction hearing. He was supposed to - - |
| THE COURT: | I'm not talking about a bond reduction. |
| THE DEFENDANT: | I wrote you. I wrote you. |
| THE COURT: | Okay. And you addressed the concerns that you had with your lawyer? |
| THE DEFENDANT: | [N]o. No, sir. * * * |
| THE COURT: | You didn't put me on notice or give me any indication that you believe that your relationship had broken down, that you were - - had lost confidence in your lawyer. You didn't give me that information, did you? |
| THE DEFENDANT: | No. |
| THE COURT: | Well, look - - let me address a couple of issues. First of all, [defense counsel], if your recitation of that conversation is accurate, and I have no reason to think it's not, then that recording ought to be turned over to law enforcement immediately for * * * law enforcement to consider the appropriate criminal charges, if they deem that's appropriate. That's not my responsibility or my jurisdiction. But if a lawyer in my courtroom is being threatened by anybody, particularly in a manner as graphic and disturbing as what you're conveying, then that person should be subject to criminal prosecution. I believe intimidation of an attorney in the course of his or her representation is a felony of the third degree. And I will tell you, from my perspective, I will not tolerate any attorneys, especially court-appointed attorneys fighting for their clients, to be threatened. And if that is the case, I would urge you to work with the prosecutor's office and the appropriate law enforcement agency to look into that. |
| | On the other hand, this [c]ourt has competing interests to weigh relative to the release of a lawyer |

from responsibility of [the] representation [of] a client.  And of paramount concern to this [c]ourt is -- while taking into consideration what you're suggesting, the concerns you've expressed, a lack of trust * * * your client has in you, and the fact that you're upset by being threatened by your client's family members, certainly is a substantial issue that does raise some concerns for the [c]ourt.

On the other hand, you've not suggested that your client has threatened you in any way, shape, or form.

[DEFENSE COUNSEL]:    He has not.

THE COURT:    I appreciate that.  And we are on the morning of trial. If this - - you were appointed, I note from the docket, on * * * April 1st, 2021.  You were appointed to this case therefore 14 months ago.  And in 14 months, I haven't heard a single issue of a breakdown in the attorney-client relationship prior to the morning of trial.  The prosecutor has subpoenaed witnesses and is prepared for trial.  This Court has order[ed] 75 citizens of this county to drop what they're doing and come to court to hear this case.   Mr. Hicks is incarcerated for his failure to appear at his last trial, which means if I grant your * * * motion, he's going to have to sit in jail for another God knows when to get a new lawyer up to speed and get this case on the trial docket, which is probably months out, [prosecutor], would you say?

[PROSECUTOR]:    Probably November.

THE COURT:    So the bottom line is, this [c]ourt is not going to release you on the morning of trial for a very serious case, with witnesses, the public called in, when * * * the substantial concern that you've expressed is a threat by your client's sister, which again, I respect as being troubling, but it's not from your client, and the fact that your client didn't like how you handled the bond hearing.

If I had a dollar for every criminal defendant incarcerated who didn't like the results of a bond hearing, whether it was from the lawyer or a judge, I would probably be a millionaire, because I denied his

bond request. And so I understand him being frustrated with you. * * *

In any event, the motion is going to be denied. * * *

I should also put on the record that the case was indicted in February of '21, almost a year-and-a-half ago, the case has been pending for more than a year, and a jury is finally brought here. And by the way, let me say one other thing. [Mr. Hicks] missed a trial date which would have potentially resolved the case months earlier, so we're going forward today. * * *

Mr. Hicks, keep one other thing in mind, and then I'll move on. If I was to grant your attorney's request to get off the case or let * * * you get a new lawyer, it's going to be months before I can get a new lawyer who knows the case, who's seen the evidence, who's met with you, who can get up to speed, let alone find a new trial date. And since you missed a trial date, you're going to sit in jail until this case is done. * * * [T]hat's a big part of it.

{¶14} Here, the trial court inquired of the defendant as to the nature of the breakdown of the attorney-client relationship. The trial court noted that while Mr. Hicks maintained that the attorney-client relationship broke down months ago, Mr. Hicks did not bring the breakdown of the relationship to the attention of the trial court until the morning the trial was to proceed. The trial court was then required to balance Mr. Hicks' desire with the public's interest in the administration of justice. The trial court noted that the case had been pending for over a year, that Mr. Hicks had already missed one trial date, and that jurors had already been summoned to the court for a jury trial to begin that date. While this Court is troubled by the threats made against counsel, in the context of this case, we cannot find that the trial court abused its discretion in denying the motion to withdraw as counsel. The trial court seriously considered counsel's motion and weighed the competing interests in the administration of justice.

{¶15} Mr. Hicks' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY FAILING TO DECLARE A MISTRIAL SUA SPONTE BECAUSE OF THE SERIOUS MISCONDUCT OCCURRING DURING THE PROCEEDINGS, AND THE FAILURE TO DO SO CONSTITUTED PLAIN ERROR WHICH PREJUDICED [MR. HICKS].**

**{¶16}** In his second assignment of error, Mr. Hicks argues it was plain error for the trial court to not sua sponte declare a mistrial due to his own misconduct during the proceedings. For the reasons that follow, we disagree.

**{¶17}** Mr. Hicks argues that the trial court erred when it failed to declare a mistrial when he made a motion to dismiss his counsel and proceed *pro se* during the middle of the cross-examination of the victim, and when it failed to declare a mistrial after he repeatedly interrupted the judge, the prosecutor, and various witnesses with his own outbursts. Because no objection was made to the trial court, Mr. Hicks has forfeited all but plain error on appeal. "To prevail, appellant must show that an error occurred, that the error was plain, and that the error affected his substantial rights." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 52, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *see* Crim.R. 52(B). "We take 'notice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Wilks* at ¶ 52, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶18}** Here, Mr. Hicks argues that it was plain error for the trial court to not declare a mistrial after the trial court (1) failed to appoint new counsel, (2) did not allow Mr. Hicks time to prepare for trial when he decided to proceed *pro se*, and (3) prevented Mr. Hicks from "making an incessant series of prejudicial outbursts, disruptions, and inappropriate remarks[.]"

**{¶19}** However, under the invited error doctrine, a defendant may not "'take advantage of an error which he himself invited or induced.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-

4539, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. "'A litigant cannot be permitted, either intentionally or [unintentionally] to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.'" (Alteration in original.) *State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 27, quoting *State v. Ealy*, 10th Dist. Franklin No. 15AP-600, 2016-Ohio-1185, ¶ 30.

{¶20}  Here, assuming *arguendo* it was error for the trial court to fail to declare a mistrial, the actions that Mr. Hicks alleges constituted prejudicial conduct were actions that he himself undertook during trial.  During cross-examination of his daughter, Mr. Hicks repeatedly interrupted his counsel to make a motion to the trial court to proceed *pro se* because Mr. Hicks wanted to cross-examine his own daughter.  The trial court repeatedly warned Mr. Hicks of the risks in representing himself.  When Mr. Hicks insisted on proceeding *pro se*, the trial court repeatedly asked Mr. Hicks if he was making his waiver of counsel knowingly, voluntarily and intelligently.  Despite the forgoing, Mr. Hicks now asks this Court to declare as prejudicial error the trial court's decision to grant his wish to proceed *pro se*.  Even if this Court assumes error on allowing his *pro se* representation, however, any alleged error was invited by Mr. Hicks and is therefore not reversible error under the invited error doctrine.

{¶21}  Additionally, after being allowed to proceed *pro se*, the record shows that Mr. Hicks repeatedly interrupted the trial judge, the prosecutor, and the witnesses.  Mr. Hicks did so despite multiple warnings from the trial court about the ramifications of his conduct.  "[T]he invited error doctrine precludes [the defendant] from taking advantage of any prejudice that resulted from his own 'outbursts and interruptions.'" *State v. Welninski*, 6th Dist. Wood No. WD-16-039, WD-16-040, 2018-Ohio-778, ¶ 74, quoting *State v. Gonzalez*, 4th Dist. Athens No. 97CA52, 1998 WL

823737 (Nov. 18, 1998). *See also State v. McCollum*, 8th Dist. Cuyahoga No. 111370, 2023-Ohio-69, ¶ 12 ("[T]his court has held that when the defendant is the culprit of the emotional outburst, the issue falls under the invited error doctrine.").

**{¶22}** Because the alleged errors were actions that Mr. Hicks himself undertook or moved the trial court to undertake, under the invited error doctrine, Mr. Hicks is not permitted to take advantage of the alleged errors.

**{¶23}** Mr. Hicks' second assignment of error is overruled.

### III.

**{¶24}** Mr. Hicks' first and second assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

PAUL E. MEYER, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.