[Cite as *State v. McIntyre*, 2025-Ohio-5842.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

SELENA MCINTYRE

    Appellant

C.A. No.    31083

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2022-06-2332

DECISION AND JOURNAL ENTRY

Dated: December 31, 2025

---

SUTTON, Judge.

**{¶1}** Defendant-Appellant Selena McIntyre appeals the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Ms. McIntyre was a recipient of housing assistance benefits from the Akron Metropolitan Housing Authority ("AMHA"). AMHA benefits are provided to low-income individuals who meet income eligibility criteria. Ms. McIntyre began receiving housing assistance benefits in May 2017. Tenants of AMHA units must submit updated financial information annually in connection with the annual recertification process and when there is a change of income. On May 25, 2017, Ms. McIntyre signed a form acknowledging she understood if her income changed, she must report the change in writing within 10 days.

{¶3} In July 2020, AMHA sent Ms. McIntyre a "Notice of Termination of Lease" due to her "[f]ailure to pay rent when due in accordance with the terms of [her lease.]" On September 1, 2020, AMHA left a "3-Day Notice to Leave the Premises" at Ms. McIntyre's apartment asking her to leave the premises or an eviction action may be initiated against her. In a letter dated September 18, 2020, AMHA notified Ms. McIntyre her lease would not be terminated if she submitted proof of payment on or before September 25, 2020. Instead of proof of payment, Ms. McIntyre submitted an online change form listing her gross income as "$0.00" A few weeks later, Ms. McIntyre submitted another form stating she was "[o]n unpaid leave." On October 23, 2020, as a result of her purportedly having zero income, Ms. McIntyre's monthly rent was adjusted to "$-7.00," which was a credit toward her utilities. During her January 2021 annual recertification, Ms. McIntyre stated that she was still unemployed. Ms. McIntyre's rent was then adjusted to "$7.00." During her January 2022 recertification, Ms. McIntyre disclosed she was employed by Progressive Insurance and stated she had been so employed since April 2018. At that time, Ms. McIntyre listed her income as $18.03 per hour at 40 hours per week.

{¶4} After an investigation, it was determined based on her income that Ms. McIntyre should have paid $521.00 per month in rent from October 2020 to August 2021, and $683.00 per month from September 2021 to February 2022. Ms. McIntyre was subsequently indicted on one count of grand theft, in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fourth degree. The indictment alleged:

> **SELENA E. MCINTYRE** on or about the 25th day of September, 2020 through the 10th day of January 2022 . . . did with purpose to deprive the owner, AMHA, of property or services, to wit: housing assistance benefits, knowingly obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent[.]

{¶5}  At a December 6, 2022 pre-trial, defense counsel requested Ms. McIntyre be considered for intervention in lieu of conviction due to his client's "memory loss and . . . cognitive disability" which he believed "contributed to the facts of this case."  The trial court then ordered Ms. McIntyre to be screened for intervention in lieu of conviction to determine whether Ms. McIntyre was eligible for the program.  Intervention in lieu of conviction allows a defendant to undergo treatment and upon successful completion of the program, the indictment will be dismissed and the case sealed.  After the initial assessment report concluded Ms. McIntyre's "substance use was not a leading factor in the criminal offense with which she" was charged, and did not recommend her for intervention in lieu of conviction, the trial court ordered a second screening to assess "mental health/illness; or intellectual disability issues" because the first assessment appeared to screen only for substance use.  After Ms. McIntyre was re-screened, a second report was issued.  However, a recommendation as to her participation in intervention in lieu of conviction was not made at that time due to Ms. McIntyre's "inability to detail facts of the offense[.]"  The report also noted Ms. McIntyre did not understand "why she [was] being charged for wrong doing."

{¶6}  Although the report did not affirmatively recommend Ms. McIntyre for intervention in lieu of conviction, Ms. McIntyre's attorney argued the trial court should nevertheless order intervention in lieu of conviction, stating Ms. McIntyre had undergone brain surgery and suffered memory loss.  The trial court denied the motion for intervention in lieu of conviction and instead ordered Ms. McIntyre to undergo an evaluation to determine whether she was competent to stand trial.  In denying the motion for intervention in lieu of conviction, the trial court stated, "[a]lways of concern to me is someone's ability to participate in intervention which is, can be, which can be trying potentially, in terms of scheduling and compliance issues."

{¶7} The competency evaluation was done and the evaluator opined in the report that Ms. McIntyre was not incompetent and she was "capable of understanding the nature and objective of the proceedings against her, and of assisting in her defense." Ms. McIntyre and the State stipulated to the competency report and the trial court found Ms. McIntyre was competent to stand trial. Successor counsel for Ms. McIntyre also stipulated to the competency report after having had an opportunity to review the report.

{¶8} The subject of intervention in lieu of conviction was again raised immediately prior to trial. The trial court stated it would be willing to consider intervention in lieu of conviction in order to resolve the matter, but Ms. McIntyre's counsel stated she had rejected that offer. The matter then proceeded to a jury trial.

{¶9} At trial, the following evidence was presented. In September 2020, Ms. McIntyre reported her income to AMHA as "zero dollars," and indicated on a form submitted to AMHA in October 2020, that she was on "unpaid leave." Ms. McIntyre also submitted a form to AMHA in January 2021 for recertification of her eligibility for housing assistance stating she was still unemployed. At trial, Ms. McIntyre agreed from May 1, 2020, through February 1, 2022, her monthly rent was substantially reduced based on her informing the agency her income was zero. Ms. McIntyre also admitted when she submitted the form to AMHA in September 2020, indicating her income was zero, that was not true and that between April 18, 2018, and January 10, 2022, she was receiving income from her employer Progressive Insurance. She further admitted in all of 2021 she received income, and the only time-period in which she received zero income was a two-week period from October 4, 2020, through October 17, 2020.

{¶10} The jury found Ms. McIntyre guilty of grand theft. The jury found the value of the property or services involved was $1,000.00 or more to less than $7,500.00, making the offense a

felony of the fifth degree. The trial court imposed a two-year community control sanction and ordered restitution in the amount of $7,499.00.

{¶11} Ms. McIntyre has appealed her conviction, raising four assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE STATE'S EVIDENCE WAS OF A THEFT BY DECEPTION OR A FRAUD CRIME FOR WHICH [MS. McINTYRE] WAS NOT CHARGED AND AS SUCH IT FAILED TO PRODUCE SUFFICIENT EVIDENCE OF EACH ELEMENT OF GRAND THEFT SO IT FAILED TO PROVE BEYOND A REASONABLE DOUBT THE REQUISITE CRIMINAL INTENT TO COMMIT THEFT OF "PROPERTY OR SERVICES" SUCH THAT THERE IS INSUFFICIENT EVIDENCE FOR THE JURY VERDICT AND THE COURT ERRED IN DENYING [MS. McINTYRE'S] [CRIM.R.] 29 MOTION.**

{¶12} Ms. McIntyre argues the evidence was insufficient to support her theft conviction. She further argues she should have been indicted for fraud or theft by deception, and because she was not, the State failed to present sufficient evidence of theft pursuant to the subsection of R.C. 2913.02 for which she was indicted and convicted.

{¶13} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390, (Cook, J. concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to

reasonably conclude the essential elements of the crime were proven beyond a reasonable doubt. *Id.* This standard of review is the same for a denial of a Crim.R. 29 motion for acquittal. *State v. Rivera*, 2023-Ohio-1788, ¶ 37 (9th Dist.).

{¶14} Ms. McIntyre was indicted for theft, in violation of R.C. 2913.02(A)(1), which provides "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: . . . Without the consent of the owner or person authorized to give consent[.]" A person acts "knowingly" "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Ohio's definition of "deprive" includes accepting, using, or appropriating money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration. R.C. 2913.01(C)(3). The owner of the property is any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services. R.C. 2913.01(D).

{¶15} As applied to the facts in this case, the State presented evidence Ms. McIntyre knowingly exerted control over and used or appropriated government services in the form of housing benefits valued at $521.00 per month and later, at $683.00 per month, without AMHA's consent. The benefits Ms. McIntyre received had a specific dollar value, which was the amount of rent Ms. McIntyre should have paid based on her income. AMHA determined Ms. McIntyre was qualified to receive public benefits in 2017, and had consented to her receipt of those benefits at that time. However, she was required to be recertified annually, and when there was a change of income, to determine if she still qualified for such benefits. AMHA relied on the false representations made by Ms. McIntyre in determining if she still qualified for benefits and if so,

in what amount. Public benefits remain the property of the government until they are lawfully distributed to the recipient. *State v. Edmonson*, 92 Ohio St.3d 393, 397-398 (2001). AMHA could not have consented to an unlawful distribution of public benefits for which Ms. McIntyre did not qualify. *See id.* (the defendant "received [benefits] only because [the government] deemed her eligible for government assistance based on the materially false information she provided.").

{¶16} Ms. McIntyre knowingly received a monthly rent subsidy to which she was not legally entitled. Ms. McIntyre admitted her income was not zero except for a two-week period in October 2020, yet she was paying almost no rent from September 25, 2020, through February 1, 2022, the date range in the indictment. Ms. McIntyre knew she was obligated to submit updated information to AMHA concerning her income and knew her vastly reduced rent was the result of her representations that her income was zero. This evidence, if believed by the trier-of-fact, is sufficient to prove Ms. McIntyre committed the offense of theft pursuant to R.C. 2913.02(A)(1).

{¶17} Accordingly, Ms. McIntyre's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶18} Ms. McIntyre argues her conviction is against the manifest weight of the evidence. We disagree.

{¶19} As to manifest weight of the evidence this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.*

{¶20} At trial, Ms. McIntyre admitted she submitted false income information to AMHA and admitted she knew she received a substantially reduced rent as a result. After reviewing Ms. McIntyre's own testimony, together with the other evidence presented at trial, this Court cannot conclude the jury lost its way or this is the exceptional case in which the conviction is against the manifest weight of the evidence.

{¶21} Accordingly, Ms. McIntyre's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**THE COURT ABUSED ITS DISCRETION AND ACTED ARBITRARILY AND CONTRARY TO LAW IN NOT GRANTING MS. MCINTYRE INTERVENTION IN LIEU OF CONVICTION AND COMMITTED PLAIN ERROR IN NOT ORDERING INTERVENTION IN LIEU OF CONVICTION.**

{¶22} Ms. McIntyre makes two arguments here. First, she argues the trial court erred in not granting her motion for intervention in lieu of conviction and then argues the trial court committed plain error in not ordering intervention in lieu of conviction. The State argues Ms.

McIntyre rejected intervention in lieu of conviction prior to trial and therefore any error on the part of the trial court is invited error.

{¶23} Just before trial, the following exchange occurred:

THE COURT: . . . despite the fact that the State had withdrawn the offer for intervention, I would be willing to consider it if we had a resolution of this matter. But [Ms. McIntyre has] rejected, so we don't need to worry about that.

MR. MCDANIEL: My client has rejected that offer, Your Honor. Thank you.

{¶24} Under the invited error doctrine, a defendant may not "take advantage of an error which he himself invited or induced." *State v. Ford*, 2019-Ohio-4539, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. "'[A] litigant cannot be permitted, either intentionally or [unintentionally] to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.'" (Alteration in original.) *State v. Grether*, 2019-Ohio-4243, ¶ 27 (9th Dist.), quoting *State v. Ealy*, 2016-Ohio-1185, ¶ 30 (10th Dist.). *See also State v. Hicks*, 2023-Ohio-3517, ¶ 19 (9th Dist.).

{¶25} After the trial court expressed it was willing to consider allowing Ms. McIntyre to participate in intervention in lieu of conviction, Ms. McIntyre's counsel stated she had rejected the offer. Therefore, any error on the part of the trial court was invited error.

{¶26} Moreover, there was no error. Intervention in lieu of conviction is a procedure governed by R.C. 2951.041. Pursuant to that statute, if an offender is charged with a crime, and the trial court has reason to believe that drug use, alcohol use, or mental illness was a factor leading to the commission of that crime, "the court may accept, prior to the entry of a guilty plea, the offender's request for intervention in lieu of conviction." R.C. 2951.041(A)(1). Even when an offender is eligible for intervention in lieu of conviction, the statute does not create a legal right to

it. *State v. Boros,* 2017-Ohio-7405, ¶ 11 (8th Dist.), citing *State v. Roome*, 2017-Ohio-4230, ¶ 7 (12th Dist.). Rather, "the statute is permissive in nature and provides that the trial court may, in its discretion, grant the defendant an opportunity to participate in the early intervention in lieu of a sentence." *State v. Rice*, 2009-Ohio-162, ¶ 14 (2d Dist.). The trial court has the discretion to determine if an eligible offender is a good or appropriate candidate for intervention in lieu of conviction. *State v. Sanders,* 2022-Ohio-3906, ¶ 10 (9th Dist.).

{¶27} Therefore, whether or not to order intervention in lieu of conviction is reviewed by this Court for an abuse of discretion. *Roome* at ¶ 8. An abuse of discretion is more than an error of judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, we may not simply substitute our own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993).

{¶28} R.C. 2951.041(C) provides in part: "If the court finds under this division and division (B) of this section that the offender is eligible for intervention in lieu of conviction, the court shall grant the offender's request unless the court finds specific reasons to believe that the candidate's participation in intervention in lieu of conviction would be inappropriate."

{¶29} Here, the issue of intervention in lieu of conviction was addressed several times during the trial court proceedings. On December 6, 2022, Ms. McIntyre's counsel made an oral motion for her to undergo a screening for eligibility for intervention in lieu of conviction, which the trial court granted. When the screening appeared to have not been done for mental illness, the trial court ordered a second screening. The second report did not make a recommendation concerning Ms. McIntyre's eligibility for intervention in lieu of conviction but did discuss Ms. McIntyre's confusion about why she had been criminally charged. When counsel argued the trial

court should allow her to participate in the program despite the lack of recommendation, the trial court expressed concern about Ms. McIntyre's ability to participate in intervention in lieu of conviction. At that point the trial court ordered the competency evaluation. When the trial court indicated it was willing to consider intervention in lieu of conviction just prior to trial, Ms. McIntyre rejected the offer.

{¶30} Upon review, this Court cannot say the trial court erred or abused its discretion in not allowing Ms. McIntyre to participate in intervention in lieu of conviction.

{¶31} Ms. McIntyre also argues the trial court committed plain error in not allowing Ms. McIntyre to participate in intervention in lieu of conviction once successor counsel for Ms. McIntyre took over the case. She argues although her new attorney did not pursue intervention in lieu of conviction, the trial court was nevertheless obligated to order it, and because it did not do so, it committed plain error. Crim.R. 52(B) governs plain error and provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶32} "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Gordon*, 2018-Ohio-259, ¶ 23, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome.[]" *Gordon* at ¶ 23, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Ms. McIntyre has not shown the trial court committed plain error in not ordering intervention in lieu of conviction, especially in light of her rejection of it prior to trial.

{¶33} Here, there was not an obvious defect in the proceedings below that affected the outcome of the trial court proceedings, and there has not been a manifest miscarriage of justice. Therefore, we conclude the trial court did not abuse its discretion and did not commit plain error in not ordering intervention in lieu of conviction.

{¶34} Accordingly, Ms. McIntyre's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**[MS.] McINTYRE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION[.]**

{¶35} Ms. McIntyre argues trial counsel was ineffective in several respects. First, she argues successor trial counsel was ineffective for failing to pursue intervention in lieu of conviction. Second, she argues trial counsel was ineffective in failing to argue the evidence was insufficient to support the charge as indicted. This is similar to her argument that counsel was deficient in arguing his Crim.R. 29 motion for acquittal. Third, she argues an independent expert was required due to the complexities of the numbers involved and how they added up to define a felony theft of the fourth degree. This argument is similar to her fifth and sixth arguments, that an expert would have aided the jury in understanding the amount of the loss and the restitution owed.

{¶36} To succeed on an ineffective assistance of counsel claim, the defendant must show counsel's performance was deficient and the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficiency exists only if counsel's performance fell below an objective standard of reasonable representation. *See State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The defendant bears the burden to overcome the strong presumption that counsel's performance was adequate or that counsel's actions were sound trial strategy. *State v. Edwards*, 2009-Ohio-3558, ¶ 6 (9th Dist.). To demonstrate prejudice, "the defendant must prove

that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

{¶37} Ms. McIntyre argues her successor trial counsel was ineffective for not pursuing intervention in lieu of conviction. We cannot say trial counsel's decision to not further pursue intervention in lieu of conviction was unreasonable given Ms. McIntyre's rejection of intervention in lieu of conviction, the trial court's denial of previous counsel's motion, and the trial court's expressed concern about Ms. McIntyre's ability to participate in the program. Also, given that we overruled Ms. McIntyre's third assignment of error, which argued the trial court abused its discretion and committed plain error by not granting Ms. McIntyre's motion for intervention in lieu of conviction, Ms. McIntyre cannot demonstrate prejudice.

{¶38} In two of her arguments, Ms. McIntyre argues trial counsel was ineffective in not arguing strongly enough that the evidence was insufficient to support her conviction for theft in violation of R,C. 2913.02(A)(1). The record does not show counsel's performance fell below an objective standard of reasonable representation. Trial counsel extensively cross-examined the State's witnesses and argued in closing the State's evidence did not prove the elements of theft. Moreover, due to our overruling Ms. McIntyre's first assignment of error and concluding the evidence presented by the State was not insufficient, Ms. McIntyre cannot demonstrate she was prejudiced by trial counsel's performance.

{¶39} In her remaining arguments, Ms. McIntyre argues counsel was ineffective for not retaining an expert witness to assist the jury in understanding the numbers involved. The numbers were not complex. Ms. McIntyre should have paid certain amounts in rent for a certain number of months, and she did not pay those amounts. We cannot say trial counsel's representation was deficient in relying on cross-examination to question the State's numbers instead of retaining an

expert. *See State v. Maldonado*, 2002-Ohio-2205, ¶ 7 (9th Dist.) ("[D]ebatable trial strategies do not constitute ineffective assistance of counsel.") And in choosing that strategy, trial counsel was able to persuade the jury to find Ms. McIntyre guilty of a fifth-degree felony instead of the fourth-degree felony with which she was charged. R.C. 2913.02(B)(2) provides in part, "[i]f the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree.

{¶40} Ms. McIntyre has not demonstrated her counsel's representation was deficient nor has she demonstrated prejudice.

{¶41} Accordingly, Ms. McIntyre's fourth assignment of error is overruled.

III.

{¶42} For the forgoing reasons, Ms. McIntyre's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶43} I respectfully dissent from the judgment of the majority as I would conclude that McIntyre's conviction was not supported by sufficient evidence. McIntyre was only charged with violating R.C. 2913.02(A)(1), which prohibits depriving the owner of property or services without consent. However, McIntyre did not take the property or services without consent. The agency gave McIntyre the funds at issue. Instead, the record supports that McIntyre lied in order to get the agency to give her the funds. In other words, McIntyre violated R.C. 2913.02(A)(3) and committed theft by deception, a crime for which the State did not charge her.

{¶44} Moreover, the majority's reliance on *State v. Edmondson*, 92 Ohio St.3d 393, 397-398 (2001), in support of its analysis is misplaced. *Edmondson* is a case involving theft by deception, not theft via lack of consent. *Id.* at 393-394. Moreover, the sole contested issue in *Edmondson* was the degree of the offense committed, which only involves consideration of the value of the stolen property or services. *Id.* at 397. The Supreme Court was faced with evaluating whether all of the funds dispersed to Edmondson should be considered stolen. *Id.* The Supreme

Court did not even consider whether there was sufficient evidence to support the convictions for theft by deception. *Id.* at 396-397. Thus, I would conclude *Edmondson* has no value in determining whether sufficient evidence supported McIntyre's convictions for theft via a lack of consent.

{¶45} While some may consider this result unjust, the Court is limited to determining whether the conviction for the crime charged is supported by sufficient evidence. In this case, it is not. Accordingly, I respectfully dissent.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.